SO ORDERED.

SIGNED this 22 day of March, 2013.

_____
J. Rich Leonard
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

IN RE:

AUBREY LYMAN MEADE, JR.,                    CASE NO. 09–11148–8–JRL

      DEBTOR.                                          CHAPTER 11

## ORDER

This matter came before the court on the motion of Bank of America, successor–in–interest

to GreenPoint Mortgage Funding, Inc. (collectively "Bank of America"), regarding whether the sale

of 228 Shawnee Drive, Louisburg, North Carolina conformed to this court's order, entered on

February 16, 2012, authorizing the debtor to sell the real property free and clear of all liens,

including the liens of Bank of America.  A hearing on the matter took place in Raleigh, North

Carolina on March 12, 2013.  At the conclusion of the hearing, the court took the matter under

advisement.

## BACKGROUND

Aubrey Lyman Meade, Jr. ("debtor") filed a voluntary petition for relief under chapter 11

of the Bankruptcy Code on December 22, 2009.  The debtor's plan of reorganization, filed on March

1

22, 2010, was confirmed by order entered on September 1, 2010. Class 4 of the debtor's confirmed plan consisted of the two liens held by Bank of America on the real property arising out of the deeds of trust executed on December 16, 2005. Specifically, it provided that should an eventual adversary proceeding successfully invalidate Bank of America's liens, its claims shall be treated as general unsecured claims under Class 10. As a general unsecured creditor, Bank of America would be entitled to a pro rata share of $59,183.88, payable in forty quarterly installments of $1,479.60 over a ten–year period commencing one year from the effective date. To implement and execute the plan of reorganization, the debtor proposed to make the required plan payments from, among other sources, "the net proceeds from the sale of any assets . . . ."

On October 28, 2010 and following confirmation of his plan, the debtor commenced an adversary proceeding against Bank of America, seeking to avoid two liens created by deeds of trust on real property in Franklin County, North Carolina more particularly described in the general warranty deed dated June 18, 1998, as Lot 978 in Lake Sagamore Subdivision with a physical address of 228 Shawnee Drive, Louisburg, North Carolina ("real property"). On December 16, 2005, the debtor executed four deeds of trust, all of which contained the following property description:

> Being all of Lot No. 979, lying and being in Lake Sagamore Subdivision, Cypress Creek Township, Franklin County, North Carolina, as the same is shown on those certain plats filed in the office of the Register of Deeds of Franklin County, North Carolina, in Plat Book 12, Pages 19–26, the description of said lots as shown on said plats being incorporated herein by reference thereto.

Although all the deeds of trust contained an identical property description, the first two deeds of trust incorrectly listed the property address as 228 Shawnee Drive, whereas the remaining two correctly listed the property address as 226 Shawnee Drive. Based on the property descriptions, all

2

four deeds of trust encumber Lot 979 of Lake Sagamore Subdivision, despite the parties undisputed intention to encumber 228 Shawnee Drive (Lot 978) with the first two deeds of trust and the latter two encumber 226 Shawnee Drive (Lot 979).   The deeds of trust, originally executed in favor of GreenPoint Mortgage Funding, were subsequently acquired by Bank of America.

Thereafter both parties moved for summary judgment, the debtor on March 11, 2011, and Bank of America on May 2, 2011.  Following a hearing on the parties' cross motions for summary judgment on July 12, 2011, this court entered an order allowing the debtor's motion for summary judgment and denying Bank of America's motion on July 29, 2011.  Meade v. Bank of America (In re Meade), No. 10–00280–8–JRL, 2011 WL 5909398, at *5 (Bankr. E.D.N.C. July 29, 2011).   In determining that the two deeds of trust on the real property were invalid, this court held that "[w]ithout a proper description of Lot 978 the deeds of trust at issue are not valid interests in that property, and the plaintiff may exercise his powers pursuant to § 544(a)(1) and avoid the defendant's interest in Lot 978." Id.  On August 8, 2011, Bank of America filed its notice of appeal to the district court, pursuant to 28 U.S.C. 158(a), within the period proscribed by Fed. R. Bankr. P. 8002.

While the appeal was pending before the district court, the debtor filed a motion seeking authorization to sell the real property free and clear of all liens and other interests pursuant to § 363(f) of the Bankruptcy Code on September 23, 2011 ("motion to sell real property free and clear of all liens), to which Bank of America and Lake Royale Property Owners Association, Inc. objected.[1]  On February 16, 2012 and after a hearing on the objections, this court entered an order

---

[1]The motion states, in pertinent part, as follows:

6.  Any sale of the property [located at 228 Shawnee Drive, Louisburg, North Carolina] will be proposed in good faith, will be in the best interests of the estate, and will be made for a sound business purpose, *to wit*:

3

allowing the debtor's motion, which stated that the real property

> . . . if sold, shall be sold free and clear of the following liens, which are not liens on the Debtor's Property pursuant to an order of this Court entered on July 29, 2011 [allowing the debtor's motion for summary judgment]:
>
>> a. Deeds of Trust asserted to be liens in favor of Bank of America, successor in interest to Green[P]oint Mortgage Funding, Inc. ("BOA") recorded in Book 1516, Page 548 and Book 1516, Page 569, in the office of the Register of Deeds of Franklin County, North Carolina.

On the motion of Bank of America, an order was entered on March 14, 2012, staying the distribution of the proceeds, if any, from the sale of the real property. The order specifically stated that the debtor was still permitted to market and sell the real property; however, if sold, the debtor "is prohibited from distribution of the proceeds *until such time that the district court has ruled on the appeal.*" (emphasis added). At the time this order was entered, the debtor had no prospective or potential purchaser for the real property.

On July 10, 2012, the district court entered an order affirming the decision of the bankruptcy court. Bank of America v. Meade, No. 5:11–CV–501–FL, at 8 (E.D.N.C. July 10, 2012). In reaching its conclusion, the court observed that reformation is not available to Bank of America and "[w]here the subject deeds of trust are void and not subject to reform, [the debtor], acting as a

---

> A. The Debtor is in the business of owning and developing real property in Franklin County, North Carolina. The Debtor believes that any proposed private sale of the Property will be in the best interest of the bankruptcy estate, as a sale will allow the Debtor to receive a maximum return for his creditors and provide income to the Debtor.
>
> B. The Debtor believes that any proposed sale would provide a fair and reasonable means of obtaining the greatest return on the Property. Further, the Debtor will negotiate in good faith for any such sale.

(emphasis in original).

hypothetical lien creditor pursuant to 544(a)(1), may avoid [Bank of America]'s interest in Lot 978." Id., at 7–8 (emphasizing that "where the subject deeds of trust do not provide a description or reference something extrinsic to identify the land *with certainty*, they are defective, void, and fail to provide notice, actual or constructive, under North Carolina recordation statutes." (emphasis in original and citations omitted)).  Following entry of the judgment by the district court, Bank of America timely appealed to the Fourth Circuit.  Bank of America, however, failed to seek a stay of the district court's decision pending the outcome of its appeal to the Fourth Circuit.

During the pendency of Bank of America's appeal to the Fourth Circuit and pursuant to his plan and this court's order authorizing the debtor to sell the real property free and clear of all liens, the debtor listed the real property with the real estate brokerage firm of Parler Properties, LLC, in Wake Forest, North Carolina, at $84,900.00.  In return, the debtor agreed to pay Parler a five percent commission.  As a result, the debtor received an offer to purchase the real property from Paul F. Boerner and Better A. Boerner (collectively "Boerners"), for $84,900.00.  Despite receiving two separate offers from potential purchasers, the debtor's inability to procure title insurance on the real property and the uncertainty surrounding the status of the appeal before the Fourth Circuit caused him to lose both.[2]  On November 27, 2012, the debtor sold the real property to his sister Kimberly Dawn Matthews ("Matthews") for $42,000.00.  By general warranty deed dated and recorded in

---

[2]The offer and contract executed by the Boerners was subsequently cancelled due to the debtor's inability to secure title insurance on the real property.  Due to the status of the appeal to the Fourth Circuit, title insurance companies contacted by the debtor refused to issue a title insurance policy.  In November 2012, the debtor received a second offer to purchase from Jerry Gilbert ("Gilbert"), a personal acquaintance, for $50,000.00.  Gilbert's offer, however, was contingent upon the resolution of the appeal to the Fourth Circuit within three months of the date of the offer.  After discussions with the debtor's bankruptcy counsel, Gilbert rescinded the offer because he was not satisfied that the contingency could be met.

Book 1878, Page 787 of the Franklin County Registry on November 27, 2012, the debtor conveyed the real property to Matthews. Under the circumstances and given the debtor's inability to obtain title insurance, the debtor believed that Matthews' offer was for the fair market value of the real property and was in the best interests of the estate because it would enable him to make the required plan payments and proceed towards substantial consummation of his plan. In contrast to the offer to purchase submitted by the Boerners, the debtor would not be required to pay Parler's real estate commission ($4,245.00) and closing costs ($3,500.00), while defraying further legal expenses associated with the pending appeal to the Fourth Circuit.

On January 24, 2013, Bank of America filed the motion currently before the court, asserting that the sale of the real property failed to confirm to this court's order allowing the debtor to sell it free and clear of all liens.[3] The debtor's response, filed on February 15, 2013, opposes the relief requested and argues that Bank of America should not be allowed to utilize the bankruptcy court to rescind the sale of the real property merely because it failed to seek a stay of the district court's order pending the outcome of the appeal.

## DISCUSSION

Specifically, Bank of America contends that the sale to Matthews, the debtor's sister, was not negotiated in good faith, made for a sound business purpose and for a price allowing a maximum return for the debtor's creditors. Supporting its contentions, Bank of America alleges

---

[3]Contemporaneous with Bank of America's filing of the motion currently before the court, the debtor filed a motion with the Fourth Circuit seeking dismissal of the appeal as moot. In the motion, the debtor alleges that the sale of the real property to Matthews free and clear of the liens of Bank of America pursuant to this court's authorization renders the appeal moot and therefore, the appeal should be dismissed. Bank of America filed a response objecting to the debtor's motion to dismiss on February 6, 2013. As of the date of the hearing, the Fourth Circuit has not ruled on the pending motion to dismiss.

that the tax value of the real property is $85,250.00 and the fact that Matthews was the debtor's sister indicates that the sale was not negotiated in good faith.

Section 363(f) of the Bankruptcy Code allows a debtor, utilizing his powers as the debtor–in–possession, to use or sell property of the estate free and clear of any interest in the property provided:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  "[B]ecause this deprives secured creditors of a significant right, § 363(f) provides only five narrow circumstances in which a debtor may sell property free of all liens . . . ." In re Nance Props., Inc., No. 11–06197–8–JRL, 2011 WL 5509325, at *2 (Bankr. E.D.N.C. Nov. 8, 2011).

Regardless of the contents of the debtor's motion to sell the real property free and clear of all liens, courts speak through orders. Bell v. Thompson, 545 U.S. 794, 805, 125 S. Ct. 2825, 162 L. Ed. 2d 693 (2005) ("Basic to the operation of the judicial system is the principle that a court speaks through its judgments and orders." (quoting Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C., 741 F.2d 41, 44 (4th Cir. 1984))); In re Markey, 144 B.R. 738, 745 (Bankr. W.D. Mich. 1992) (finding it "axiomatic that a court speaks through its orders.").[4]  The order authorizing the

---

[4]This court's order allowing the debtor's motion to sell the real property free and clear of all liens is clear on its face and, therefore, it not look any further than that order in determining whether Bank of America is entitled to the relief sought in its motion.

7

debtor to sell the real property free and clear of all liens, which was not stayed by the district court, set no particular standards or parameters to which the sale should adhere and also specifically recites that Bank of America does not have any liens on the real property. Therefore, the order did not inure to its benefit.

As of the date the real property was sold to Matthews, November 27, 2012, this court's order authorizing the sale free and clear of all liens was not applicable to Bank of America because it had no lien. This court's stay of its order voiding Bank of America's liens expired upon entry of the district court judgment. Accordingly, the only protections afforded to Bank of America are those of a general unsecured creditor. Article V of the confirmed plan authorizes the debtor to sell property and other assets to implement the plan's provisions. Bank of America, as a general unsecured creditor, does not have the right to attack the sale of the real property collaterally.

The debtor's most recent post–confirmation report, for the final quarter of 2012 and filed on February 5, 2013, indicated that Bank of America's claim with respect to the real property would be treated as a general unsecured claim, receiving the treatment proscribed in Class 10 of the plan. The post–confirmation report also indicated that the debtor had made the required quarterly distribution to the general unsecured class on September 15, 2011, and was in compliance with the plan with regards to Class 10. The only rights possessed by Bank of America, the right to sue the debtor for breach of his obligations under the plan with respect to the payment of general unsecured creditors, are foreclosed by the debtor's most recent post–confirmation report, which indicates that he is compliant with the required payments to general unsecured creditors under Class 10.

## CONCLUSION

Based on the foregoing, Bank of America's motion is **DENIED.** The expiration of the stay

imposed by this court on March 14, 2012, and Bank of America's failure to obtain a stay of the order authorizing the debtor to sell the real property free and clear of all liens during the pendency of the appeal to the Fourth Circuit, divested it of any standing to challenge the sale of the real property.

**END OF DOCUMENT**